First case call for oral argument is Policemen's Benevolent Labor Committee v. Madison Co. Bd. at all. Counsel, whenever you're ready, you may proceed. May it please the court. Counsel, my name is William Hardy, and I represent the appellants in this case, the Madison County Board and Sheriff Robert Hertz. Your Honor, this case involves a straightforward issue of law, a legal issue for which this court applies a de novo standard of review. Both parties agree on that. Both the sheriff and the union agree on the legal principles that apply. The question is the interpretation of the collective bargaining agreement. And there's a key provision, the definition of the agreement, that is at the very heart of the case. And that definition provides that for purposes of the agreement, the agreements shall be defined as any dispute or difference of opinion raised by an employee against the county involving the meaning, interpretation, or application of the provisions of this agreement, except for actions involving the motion, suspension, and termination, which are appealable under Article VI. So how does that definition fit into this case? Well, the facts, the pertinent facts are undisputed. We filed, the sheriff filed charges with the Merritt Commission seeking termination based not only on what happened on that day when Ms. Nunn failed to show up for work, but also based on a prior suspension. The union then filed an action for a grievance requesting that the matter be arbitrated. Now, what does that grievance say? When you look at that grievance, I don't know how anyone could read it and say that it does not involve, that it does not involve the termination of Ms. Nunn. There's simply no way that you can read that grievance otherwise. The grievance starts out with the facts. It says it doesn't contest that she didn't show up for work, asked for seven hours of sick leave, lays out the facts as they claim they exist, and then goes on to say that the sheriff shouldn't be allowed to use this as an aggravating circumstance in seeking termination. And then, in the very remedy, asks the arbitrator to, quote, return her back to work as her tardiness or missing work was not cause for discharge. Mr. Hardy? Yes. If the facts had been that she called in rather than the other way around and said, I'm really not feeling well, I know I've got my shift, I don't think I can make it to work, would the outcome be entirely different? If she just simply called in sick? Yes. Well, I think it probably would be different. If she had simply called in sick under the agreement, assuming she had sick leave still available, I think the outcome would be different. But, you know, of course, these cases are always fact-specific. And I understand that Mr. Dykstra is trying to create some kind of a question of fact here that an arbitrator needs to decide. But the legal question here, whether or not this is excluded under the collective bargaining agreement, is straightforward. Is there really much of a factual issue? There's no factual issue at all in terms of the legal question. But she's not saying that she did call in. No. No, the only thing that she contests is what happened after she called in, or after the sheriff called in. I don't think anybody disputes what happened. She didn't show up at 6 o'clock. The sheriff's office calls at 7 o'clock. The sheriff's office says that she stated at that point or later on, look, I'll come into work, although I'm intoxicated. She said, no, I called myself. I said, look, I'm intoxicated. I'd like to take sick leave. That is where the union is trying to make out a factual dispute. But she didn't contest that she was too intoxicated to work, essentially. That's correct. OK. That's absolutely correct. But on page 16 of their brief, they point out that, here's what they say, ultimately, page 14, excuse me. The parties did, this is a quote right out of the industry. The parties did expressly agree to exclude actions involving devotion, suspension, and termination from the grievance procedure. OK? So the grievance procedure is defined by the collective bargaining agreement. Now, I don't know how you can look at that grievance and say it doesn't involve the termination. That's exactly what they're trying to do. They're trying to affect the termination. This is not a case like the facts that you're giving me, Justice Chapman, where she simply called in. She says, I'm sick. I can't come in. And they disputed it. And they disputed it. This is a case where there's no question she was intoxicated. She didn't come in. She didn't show up at her scheduled time. They called. There's some arguable factual issue that they're trying to contest on what happened after that. But in terms of whether or not the grievance that's filed involves the termination, clearly it does. I don't know how you could read it any other way. I mean, it says they want the arbitrators to return her back to work as her tardiness or missing work was not cause for discharge, as the sheriff has considerable discipline at his disposal short of discharge under the merit system law. So they're seeking to influence it. I'm sorry. So the scenarios where it would be appropriate to grieve sick time is just if you have a dispute over a number of days. Can you kind of give me some examples of what would be appropriate then? Well, I think it would be appropriate if the person still had sick time available, woke up in the morning and was not feeling well, called a former scheduled shift and said, I'm not feeling well, I'm not going to make it in, I'm taking a sick day. And then the sheriff's office said, no, you are coming in, we're going to dock you. But something short of termination, would that fit into a grievance? If it did not involve termination or it did not involve, well, let's say, for example, it was a reprimand. You've got to look at the whole contract, as we argue. And when you look at it, you've got 4.1 that defines a grievance, and then you've got 6, which talks about discharge and a number of other things. And a reprimand, for example, is grieving. But if it's an action involving termination, suspension, demotion, it's not grieving, period. And I think the way you can look at this, if the union wants to continue to argue that these are separate issues, separate proceedings, whatever, you've got this action filed by the sheriff, there's no doubt about that. It's filed, says she should be terminated. It goes through the hearing process. There's a set procedure for that. It's always been the law. Now, she files an action, a grievance, saying, look, no, you can't consider that for termination. It's not just a grievance about some wage issue or sick leave dispute or something like that. It's a grievance that involves. That's the key word. Does it involve termination? And if it involves termination, that's the end of the story. That's the end of the case. Following up on Justice Chapman, was there a policy that you could call in that morning and get sick leave at the last moment? I didn't see any requirements on that. So you could literally call in that morning and say you're sick? Well, sick leave is defined under Article 16, and it says that if you're asking for an excess of three consecutive working days, it requires a written statement from a physician. I saw that, but I didn't see anything like on the spur of the moment. Well, you know, I think like any other employer, you know, if I wake up in the morning and I have a flu, I call in and I say, look, I'm sick. I have a flu. I don't want to come in. I'm taking sick leave. I'm entitled to sick leave. If I've used all my sick leave, that's a different issue. But if I have a sick leave and I'm sick and I call in, yeah, I'm entitled to the sick leave. But here we don't – there's no question, even under their version, that we don't have that. What we have is a situation where she was intoxicated from the night before. There's no question she didn't call in before. She didn't come in to work. You know, and then, of course, we have other issues related to prior discipline that will come into play in the Merit Commission. But, again, I would ask the court to focus on the language of the collective bargaining agreement and the admission that I just read you because I don't know how anyone can argue that that grievance does not involve the termination. It clearly does. And if it does, that's the end of the story. Now, the union sort of put itself into a box here because it argues that, well, this is a separate issue. All we did was make a proposal. We made a proposal, and the arbitrator has discretion to fashion an appropriate remedy. It's simply a proposal of grievance. That's their argument. Well, then at the same time, they say it's excluded, termination. But they want the arbitrator to fashion an appropriate remedy. Again, it involves termination. End of story. So under that scenario, the arbitrator could also agree that she could have been terminated appropriately. That's their argument. Yeah, I'm just following. Or could issue it. What they really want is a decision that says, Sheriff Hertz, you cannot use this with respect to the termination. You can't consider this as an aggravating factor. You can't. And, of course, what they want is an order from the arbitrator returning her to work. Now, they say it's questionable as to whether they admit at some point it's questionable as to whether or not the arbitrator would have that authority. But then, on the other hand, they say, but the arbitrator has broad discretion. That's the whole problem with it. Well, clearly, you don't think the arbitrator could return her to work. I think that would be wrong, yes. But the arbitrator, what they want is to say, okay, Sheriff, you can't consider this in the termination. Right, they want to collaterally attack the proceedings in the merit commission, it seems to me. That's exactly what they want to do. And, you know, I don't know how you can separate the two under these circumstances. And the notion that, look, everything else in the agreement, except for Section 6.2, is subject to grievance, but nothing else is. In other words, sick leave, vacation, whatever. Let me just think of another hypothetical. Let's say you have the vacation permit, for example. It says that, you know, you have a right to vacation. You can schedule a vacation or whatnot. But in emergencies, the sheriff can call you into work, even if you have a scheduled vacation. Let's say there's a riot somewhere in Madison County. And the sheriff says, okay, all officers that are scheduled for vacation, come in. You know, the guy says, I'm going fishing. I've got this plan. Two days from now, I'm out of here. He leaves. People are killed. Whatever happens because of these riots. Sheriff brings them up on charges. They say, wait a minute. We want an arbitrator to decide whether or not, under those circumstances, that was an emergency. It's an action. And if they were to grievance that way, it's an action involving termination. It's as simple as that. You know, I understand the law. What they're trying to say is, look, if there's any question about whether or not it's arbitrable, then if there's doubt, then that should be given to the arbitrator to decide. Okay? But there's no doubt. All you have to look at is the grievance, and you see that it involves. That's the question. Does it involve termination? I don't know how you can state it any simpler. Let me ask you this. The prior incident, which is part of the sheriff's determination that an action for termination was appropriate, it's involved with this also. Would that prior action alone be sufficient grounds for termination? Would that alone? Yes. Well, I don't know how it could be without something else. If you have a prior incident for six months. Then if you have a situation such as this, which could be read as grievable or not, the way I understand the union's brief is that resolution of that by arbitration is a conditional predicate, in effect, to determining the case that the sheriff would have for termination. Why isn't that the rational reading of the labor agreement, the CBA, as a whole? Because as a whole, if you look at 4.1 plus 6.2 plus all these other provisions, the question is whether or not it involves termination. I understand that argument. But they expressly excluded actions involving termination. There's no dispute about that. So if that's correct, that you could then grieve anything that might in some way be related to termination, and here we are a year or a year and a half later in the appellate court arguing this thing. That's clearly not the intent of this, that language. I mean, that is plain, clear, unambiguous if it involves termination. And, you know, they're making that argument now. They're saying, well, yeah, this should be totally separate. But at the same time, they're saying, but the arbitrator has this authority. So they're certainly going to argue to the arbitrator, we want you to find she should be returned to work, shouldn't be considered in the merit commission proceedings, the sheriff doesn't have discretion to consider this, whatever. It involves termination. That's the problem. I understand they're arguing that it's a conditioned predicate. You can make that argument in any case involving termination where you have these interrelated issues. But here it's at the very heart of the termination proceeding, and it's at the very heart of the arbitration action that they file. Well, let me ask you this. You've given that answer a few times to some of the questions we've asked. You are saying there's a separation between termination actions in front of the merit commission and grievable issues, basically. But then, on the other hand, aren't you arguing that you're arguing, and I would assume you wouldn't want to take this position, that the power of the arbitrator could get involved and preclude the power of the merit commission to terminate when you have a situation like this on a sick leave question, and you've got a concurrent action in front of the merit commission for termination, wouldn't you be arguing in front of the arbitrator, you can make a determination as to the appropriateness of the granting or denial of the sick leave under a situation such as this, but you're out of your jurisdictional area if you start encroaching on the power of the merit commission. So don't you have two very separate entities, and therefore two very separate considerations of determinations of the issues before each of the entities, and you've got a situation where the way I understand the argument of the union is determination of the arbitration is a condition predicate, and the sheriff may or may not have that incident as one of the bases for his action to terminate in front of the merit commission. Well, you're right. I'm not taking the position here that the arbitrator has that broad of authority as they have argued. And the arbitrator I do not think has that authority. That's true. That's absolutely true. But that doesn't mean that the arbitration action that they have filed does not involve termination. I mean, it still involves termination because of the very way that it is worded. I mean, they are trying to impact the termination proceeding by filing another action of grievance involving the termination. I mean, this is not simply a sick leave issue. This is an issue where they are asking the arbitrator. They are filing the grievance and specifically in that grievance involving the termination proceedings. OK, and what you're saying is let's just say the arbitrator doesn't have that authority. Why can't you make those arguments there? Well, the whole point of the CBA contract that the parties agreed to, OK, is they agreed that under certain circumstances things are grievable. Under other circumstances, things are go to the merit commission. And the only way that it's grievable is if it does not involve termination. OK, it involves termination, period. So I'll reserve my additional five minutes for rebuttal.  Thank you, counsel. Counsel? Thank you, your honors. May it please the court. Although the facts are undisputed in this matter, I think it's helpful to review them before I proceed to the argument. On July 29, 2011, Ms. Nunn was called in at 6 o'clock and told that she was late for her assigned shift. She called back around 7 o'clock between 6.45 and 7 and said, I have realized now that I am awake that I am intoxicated and cannot come into work. If you order me into work, I will obey your order, but I do not believe that is safe, and requested the use of sick leave. That sick leave was denied and she was not ordered into work and missed that shift. She was then placed on the status of suspended pending charges before the merit commission. Ms. Nunn remains in that status and is still an employee of the Madison County Sheriff's Department. She has not yet been terminated or received any other discipline from the merit commission based on Ms. Nunn. Can I ask you a question? Her story, or what you present factually, is that she didn't think she was supposed to be on duty that day. That's correct. Okay. If she had just not shown up at all, and no one had called from the Sheriff's Department, and she just blew off the day, and they filed the same matter with the merit commission, would you be here arguing the same position? I don't believe we would. Okay. I'm trying to figure out. To me, the whole fact that she never called and they called her seems to be really kind of a critical thing, because there's really nothing to make me believe that she would have ever called, because she says she couldn't remember or maybe because she was drunk. She just wasn't going to come in, period, because either she forgot or was drunk or didn't know it was her shift. And so the fact, it seems like you're trying to switch this into a grievance because of the fact that at some point she was alerted by the Sheriff's Department that she should come in. I think had she not made contact with her or had the Sheriff's Department been unable to make contact with her that day, the facts would be vastly different. There would be no dispute over whether she was entitled to sick leave for seven hours of that shift, and she would have, in fact, missed the full shift, and the Sheriff could then file a charge with the merit commission based on missing an entire shift. As we stand, I think there's a dispute over whether she's entitled to sick leave, and I'll jump ahead a little bit. Part of the reason that distinction is important is that she's entitled to pay, we believe, for that use of sick leave. The merit commission, created statutorily, has certain authorities to hire, promote, and certify employees, and they do not have the authority to decide whether employees can or cannot use sick leave. There is a monetary element to that use of sick leave. She should be paid for seven hours of sick leave, is the union's position. The Sheriff and the county's position is that the arbitrator cannot determine that, the arbitrator being the only person who can award her that pay for those seven hours. If she has an eight-hour shift, if she had called at hour seven, or they had called her at hour seven, would you have the same legal argument? I believe we would. We would still have a dispute over whether she was entitled to one hour of sick leave. Or ten minutes. It just gets rather absurd, I think, because of the fact that the whole thing was triggered by the Sheriff's Department. She was oblivious when, for whatever reason, she had no intention of going to work that day. That seems pretty clear to me. That's correct, but I think the relevant point is that she did, in fact, request the use of sick leave with approximately seven hours remaining in her shift. I think it's certainly possible that the arbitrator, if we were to go to arbitration, could find that she's entitled to the use of seven hours of sick leave. The Sheriff could then stand on the fact that she should be terminated for missing one hour of her shift, and the Mayor Commission could decide to uphold those charges. She could still be terminated. Or the Sheriff could say that she had conduct on becoming an officer in addition to that. I mean, there's lots of ways he could have filed for termination, even if your grievance went forward. That's correct. I mean, he has lots of options available to him in terminating her, otherwise than the fact that the grievance exists, right? That is correct. And the Mayor Commission, where the sports finally could not go to arbitration, we could still present the argument that she could have been entitled to sick leave, but we cannot get that seven hours of pay that she is entitled to. You've got a situation where, if you look at the specific language of these sections and you look at the CBA as a whole, you've got some area overlapping jurisdiction in effect. What is your best argument and authority for the fact, the way I understand your argument, is that since there is a preference for arbitration, that the arbitration and termination of that is a conditioned predicate for including this particular incident as a basis for discharge in front of the Mayor Commission. What is your best argument and authority for that position, that it needs to be a conditioned precedent? I think the best argument is that the dispute is whether she used sick leave, and there is a monetary component to whether or not she was entitled to sick leave. There is seven hours of pay at question. The arbitrator has the authority to award those seven hours of pay. The Mayor Commission does not. In order to get those seven hours, which she is contractually entitled to, we must go to arbitration to determine whether she is entitled to that or not. The Mayor Commission could have proceeded on the charges without waiting for the arbitration. The parties agreed to delay the Mayor Commission until these proceedings have completed, specifically the court proceedings. I don't know if we would have agreed or not to delay until the arbitration proceedings have completed. The Mayor Commission did not have the obligation to wait. They could have proceeded forward, and we could have filed a separate legal argument over whether they would have been enjoined from proceeding pending the arbitration. I don't know the answer to that off the top of my head. Our position would be that they must wait for this arbitration to determine what the charges should be, rather than having two separate factual hearings that could result in different factual findings over the same set of circumstances. So your position is that, I'm not going to put words in your mouth, you're not admitting but you're arguing that it was a foreseeable possibility that you could have two concurrent procedures going on. That certainly was possible, and we most likely would have taken some legal action to prevent that from happening. But there was an agreement that it would not in these particular circumstances? Yes, the parties agreed to continue or delay the Mayor Commission proceedings until we have completed at least the judicial proceedings so far. I think I began by talking about reviewing the facts, and I think the facts make clear that there are two disputes. There's whether she was entitled to sick leave, which entitles her to seven hours of pay, and there's also what action the Mayor Commission should take regarding what discipline should be imposed. While certainly the Mayor Commission could be affected by the arbitration and finding that she was entitled to seven hours of sick leave, those are two separate disputes. The Mayor Commission could have proceeded, as I have said, on the charges as we laid. They chose, and the county and the sheriff have agreed to continue those proceedings until we resolve this issue. They could have proceeded on the charge that she missed an entire shift. They could continue to proceed, even after an arbitration, on the charge that she missed one hour of a shift and find that that, combined with her history, is enough to find for termination or suspension or demotion or any other level of discipline they are authorized to issue. Do you agree that the arbitrator here is limited only to the granting of pay or not pay? I do. So in the grievance, when the appellant talks about how Union wants her to be returned to work, you would agree that that's beyond the scope of the arbitrator's power? Yes, and if the arbitrator were to find that, I would believe that the county or the sheriff would most likely file in the circuit court for review of that arbitrator's decision and find that the arbitrator had exceeded her authority. But yet, don't you argue, then, that the arbitrator might fashion a different punishment or might decide that termination was too harsh? I thought that that was part of your argument. I believe our argument was that the arbitrator has the authority to fashion whatever remedy they believe they can is within their authority. I know the appellant made mention of the fact that the grievance contained a request that the employee be returned from work and the merit commission charge was withdrawn and took the position that that was a command to the arbitrator that this is the remedy we desire. I think our position, as made clear in our brief, is that the grievance form is a form that goes through several steps in a process before we get to arbitration, including going through supervisors and ultimately up to the sheriff to determine if we can resolve this dispute without going to arbitration. The purpose of the remedy request in the grievance is to give those people in those steps the option to grant that remedy. There's no reason we should limit ourselves to things that are within the arbitrator's authority when first it must go to the sheriff who has the authority to withdraw those charges from the merit commission. The arbitrator only has the authority granted to her by the contract. If the arbitrator exceeded that authority, then the parties could petition the circuit court to review that arbitration and find that the arbitrator had exceeded her authority or had not exceeded her authority, and there is review that way of the arbitrator. The appellant also discussed the specific language of the grievance procedure that includes the exception for matters involving the motion suspension and termination. He took a quite literal approach that because this matter involves a termination, although I would disagree that it involves a termination as to this point there has been no discipline imposed upon this none, she is simply suspended pending charges before the merit commission, that this matter cannot go to the arbitrator. I think in examining the contract, you must look at the words in their context. The sentence and the exception that matters involving the motion suspension and termination cannot go to arbitration involves matters before the merit commission. Discipline imposed by the sheriff that can be reviewed by the merit commission or discipline imposed by the merit commission that is subject to administrative review. It does not include any matter that could potentially result in discipline but is yet grievable. I believe the appellant's attorney discussed the hypothetical where an employee is out on vacation time and decides he's not going to come back when the sheriff orders somebody in. I don't think that's an accurate hypothetical because it does not mirror the circumstances here. Ms. Nunn explained in her telephone call that if they order her in, she would come in even though it would be unwise for her to drive in her state. They chose not to order her in. In this hypothetical where an employee is ordered in off vacation, the employee must obey the order. Employees must obey orders and work first and grieve later. That is not what happened in this situation and I don't think that hypothetical is analogous. The appellants also cite Creve Coeur v. Fletcher in support of their argument, stating that it's similar to this case in that discipline could not be reviewed by an arbitrator and must be reviewed through administrative review procedures. However, that case is not similar factually, and that matter of discipline had been imposed by a fire and police commission, which is analogous to a merit commission but on a municipal level rather than a county level. The discipline imposed by that fire and police commission, which was subject to judicial review, was then reviewed by an arbitrator, and the court looked at the certain circumstances that could result in that. That is not the case at present where Ms. Nunn has not received any termination. We are not seeking arbitrable review of any discipline that was imposed upon her. We are simply seeking for an arbitrator to determine whether or not she was entitled to use of sick leave for seven hours of her shift on July 29th. Excuse me, do you read Judge Crowder's order as requiring arbitration only and that the parties cannot proceed to the merit commission on this issue? I do not. My reading of the order is that the parties must proceed to arbitration on the grievance, which is related to sick leave. I don't believe the order limits the merit commission in any way. Because this was a grant of summary judgment. Was the summary judgment on the pleadings requiring arbitration as to the placement of Ms. Nunn back to work? The summary judgment was on the motion to compel arbitration, which was filed based on compelling the parties to proceed to arbitration on the grievance, which included in its remedy requested that she be placed back to work. However, I don't believe the arbitrator has the authority to insist that she be taken off the suspension pending discharge or that the merit commission charges be withdrawn. I think I explained in the brief and have explained here briefly today that the remedy sought in the grievance is not binding on the parties when they go to arbitration and is not binding on the arbitrator as to what he or she may issue. The remedy sought is simply a request for the grievance procedure to help the parties try and resolve this dispute before proceeding to arbitration. Well, do you believe that her order indicating that the arbitration would be raised judicata as to the merit commission is true? If in the arbitration for the grievance, as you just described, you cannot talk about termination, you can only talk about money, then how can that be raised judicata as to the merit commission? I think it would be determinative on how much of her shift she missed. If the arbitrator found she was entitled to sick leave, then the merit commission would not be entitled to find that she had missed her entire shift. If the arbitrator found that she had missed her entire shift, then the merit commission would not be entitled to find that she was entitled to sick leave. Then you're dancing around the real question, and that's whether or not they can affect a termination or any other discipline. I suppose if the arbitrator issued an award that said this employee was entitled to seven hours of sick leave, she cannot be terminated for this offense, that award would have an effect on the merit commission and that they cannot proceed because the sheriff is bound by the award of the arbitrator. I suspect if that were to happen, the sheriff would be in the circuit court the next day filing a petition to overturn that arbitrator's award, a motion to vacate that award. So you do think it's raised judicata, and they can determine whether or not she remains employed? I don't believe the arbitrator has that authority. However, if the arbitrator found that, the sheriff would be bound by that and would have to file either a motion to vacate or a motion to vacate that award before he could proceed to the merit commission. Because the arbitrator had exceeded the scope of his or her authority? That's correct. And you would agree to that? Would you concede that? I would concede if the arbitrator delves into the termination discipline issue, that would be in excess of her authority, yes. But that was the actual remedy sought, correct? In the grievance, yes. It would not be a remedy sought from the arbitrator. The remedy sought in the grievance is something that goes to the sheriff. The sheriff was certainly within his authority to withdraw the charges from the merit commission if he decided, Yes, they are correct. She was entitled to seven hours of sick leave because the contract states if an employee requests sick leave, it shall be granted. The sheriff was not the person on the phone on July 29, 2011. It was her immediate supervisor, a sergeant or a lieutenant. Well, we're just using the sheriff generically. Yes, the sheriff generically did not know on that date that she had requested sick leave. I don't know when the sheriff found that out. He may not have found out until that grievance came across his desk. So you're saying the outcome could have been that they fired her after that shift ended, but she still gets her seven hours. That's correct. I think there's one other hypothetical I want to address that was raised in the appellate's brief where they discussed an employee who comes into work intoxicated or comes into a training scenario intoxicated. And that that employee could then request sick leave on the spot and then be exempt from any possible discipline because they showed up to work intoxicated, similar to Ms. Nunn was intoxicated on the morning of July 29. I think that hypothetical situation is factually dissimilar from what happened with Ms. Nunn. If an employee comes into work as intoxicated at work, it takes presumably some amount of time before either the employee or the employer realizes that employee is intoxicated. It takes some amount of time before they can request sick leave. It takes some amount of time for that employee to travel from home to work while intoxicated. Ms. Nunn did not leave her house that morning while she was intoxicated because she knew it would be unwise to do so. An employee who goes to work, who travels from his home to work while intoxicated, is subject to a different factual pattern than Ms. Nunn. That employee could be subject to discipline for being intoxicated while Ms. Nunn cannot be disciplined simply for being intoxicated. She can be disciplined for not showing up to work. The employee in the hypothetical in the appellate's brief is an employee who did show up to work but is intoxicated. I think it's an important factual distinction and I think that hypothetical is irrelevant in this argument. And I think finally I just want to make clear one more time that our goal in proceeding to arbitration is not entirely to take the power away from the Mayoral Commission to fire her. I think if we win at arbitration it certainly diminishes that power because an employee who has missed one hour of a shift is less culpable for discipline than an employee who has missed eight hours or a full shift. There's no dispute that if we win at arbitration it hurts the Sheriff's case in front of the Mayoral Commission. However, we are not directly attacking the charges filed with the Mayoral Commission or the Mayoral Commission's authority through the arbitration. What we are seeking through arbitration is seven hours of sick time which has a monetary value which can only be awarded by the arbitrator. And then the Sheriff is free to proceed at the Mayoral Commission based on the findings of the arbitrator whether Ms. Nunn missed seven hours of shift, eight hours of shift, one hour of shift or anywhere in between. So they can't consider any of the circumstances, if you win they can't, the Sheriff's Department in fashioning their punishment could not consider any of the circumstances that underlay the whole situation. In other words, they just have to say, they would just have to determine whether or not or have the ability to determine whether or not if you missed one hour of work whether or not a termination would be too harsh. Well in conjunction, yes, they can determine if missing one hour because you were intoxicated because you mixed up your days off because of all these other factual issues. I think there's more to it than just the amount of time missed but I think the amount of time missed is an important factor and certainly that could be affected by the arbitration and will be affected by the arbitration. But I thought you just told me that it would affect the outcome of the Merit Commission because if she were entitled to the seven hours that could not be considered. Those seven hours could not be considered. There's no dispute that Ms. Nunn missed one hour of her shift on July 29th. She did not request sick time until approximately 7 o'clock on that day. But she would have missed all eight if it weren't for the fact that the Sheriff's Department called her and asked her to come into work. That's correct. And she would have missed seven hours if they had granted her sick leave on the day she requested it. So what you're saying is, and I think the last paragraph of Judge Crowder's order basically says, that the arbitrator has the power to resolve this and does not preclude the Merit Commission from looking at the entire circumstances of what the arbitrator heard and decided but would be bound by the finding of fact by the arbitrator. Is that a correct statement? They could look at, the Merit Commission could look at the proceedings, would be bound by the factual finding, but could consider factors involved in that such as intoxication, such as having notice of failure to follow up on keeping track of when you're on duty, when you're off duty, if you had leave for a particular period or whatever, but would be bound by the factual determination of the arbitrator as to the granting or denial of sick leave status. That is correct. In closing, I would ask that you affirm the trial court's findings. Thank you. Thank you, Counsel. Counsel? Just as a flip side of what I just asked you, opposing Counsel, wouldn't the Sheriff be in a stronger position by resolving the arbitration, getting all of these circumstances on the record, and assessing the odds of whether the Sheriff was going to win in front of the arbitrator and having that as a factual finding basis added to whatever this prior incident was in front of the Merit Commission seeking termination? No, I don't think so. You know, I understand what Counsel has conceded here today. It's not been the position that has been taken throughout these proceedings. But I think, you know, the problem with that is, it's illustrated by your questions, Justice Chapman, about the absurdity of this. I mean, this whole thing happened because not only did she not show up, but it was the Sheriff's Office that called. I mean, they've conceded that, look, if the Sheriff's Office hadn't taken action and called, they wouldn't even be here. We'd be talking about eight hours of missed work. They've conceded that this is just about pay. They're saying this is just about pay. If she's terminated and her pay isn't accurate, you know, she will, I'm sure, claim at that point, look, I'm entitled to X number of dollars or whatever. But the problem with it is, it's this revisionist revision of what happened here. I mean, this – the union's counsel just said, look, this is not entirely about taking authority away from the merit commission with respect to the termination. So he's saying it does involve it. He's, in essence, admitting that it does involve the termination. That's the whole problem. I mean, am I taking a somewhat literal approach? Sure I am, because it's plain, clear, unambiguous. Okay. Now, I'm concerned about kind of a potential pretextual use of this. What if she had called in and said, I have a horrible headache, I tried to get there on time, and I came back home, I was throwing up, I have a migraine. And so she had already not shown up. And it sounds like a legitimate excuse, but they went ahead and said, we're not allowing sick leave, we're terminating you. Would that make any difference? If she had called, rather than the other way around, and she'd already missed some time, but it sounded more like a legitimate sick leave excuse, but would they still have the right to go before the merit commission and she not leave? Well, I think that's a more difficult question. And why? If she called in, as I said before, if she called in response to Justice Cates' question, if she had called in and said, look, I'm sick, I can't come in, I'm requesting sick leave, and then the sheriff said, no, I'm not giving you sick leave, that is a different factual scenario. I agree with you. But if you have a – and if there's then an agreement under those circumstances, it just says, look, I want to know whether I'm entitled to sick leave for that day. That's it. Nothing about termination. Nothing about whether or not it affects termination. That's a different situation. I mean, here, it's undisputedness of the facts as to what happened. It's not being used as pretext here. I mean, there's no question that she – I understand your concern, but there's no question that she didn't show up for work. She was intoxicated. She didn't call in. Sheriff called her. I just don't understand the – well, I understand what their position is, but I fully take your questions as illustrating the absurdity of this. Here the sheriff calls. I mean, there's no question she didn't show up because she was intoxicated. That's – the termination action was filed. They can't now come back and say, well, this doesn't involve termination in any way. In fact, they concede that it does. It involves it in some way. So, you know, and, of course, each fact – Excuse me. I don't understand why these can't run in two parallel hearings. He's talking about pay, and you're talking about termination. Clearly, he's admitted today that the arbitrator has no right to impact the proceedings before the merit commission. All they can talk about is money. And I don't understand why they can't proceed in parallel. Well, he's admitted that now. Here we are a year and a half later, whatever it is, in front of the appellate court. I mean – But do you agree they could proceed in parallel? Maybe the county might owe her seven hours, five hours, three hours. And maybe the sheriff says, yeah, but look at her lack of responsibility. She got drunk. She knew she was going to go to work. There are just a myriad of facts that the merit commission could consider independently that would not make her worthy of employment. And yet you might have to pay her a few hours. I don't understand why they can't go parallel. Can you explain that? They can't go parallel because the grievance itself was not simply a request over pay. The grievance itself. We've established today that that's all the authority that arbitrator has. Well, I don't know that there's been a concession because I also heard the union say that the outcome would impact possibly the remedy that the merit commission could come up with too, whether or not she was excused for the seven hours of pay. So I'm still not clear as to really what the union wants, quite honestly. The answer to your question is the property. We have a record as it exists. Okay. The sheriff, when he got that, and by the way, the sheriff didn't know about the sick leave request. That's in the charges. Okay. That's there. It mentions those in the background facts. But the sheriff was presented with a specific grievance. Okay. That's the grievance that was before, not this situation that's now developed through concessions that, oh, this is just about paying. That's it. It's not going to influence anything else. That's the situation that we have. And I think under the plain and unambiguous language of the collective bargaining agreement, there's no right to arbitrate under those circumstances. So we would ask that the court reverse and demand with directions to dismiss the grievance. Thank you. You're welcome. Thank you. We appreciate the briefs of all counsel and the argument, and we'll take the case under review.